AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Northern District of Texas

FILED
MAY - 2 2013
CLERK, U.S. DISTRICT COURT
By_____ Deputy

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* ) Case No. 4:13-MJ-264
INFORMATION ASSOC. WITH INSTAGRAM )
USERNAME OR ACCOUNT "INKOGNITO_1" THAT IS )
STORED CONTROLLED BY INSTAGRAM )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the ___Northern___ District of ___Texas, Fort Worth Division___, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☑ contraband, fruits of crime, or other items illegally possessed;
☑ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1591 | Sex Trafficking |

The application is based on these facts:
See Attached Affivadit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Greg Dickerman, Task Force Officer, Homeland Security
Printed name and title

Sworn to before me and signed in my presence.

Date: 05/02/2013

_____
Judge's signature

City and state: Fort Worth, Texas       United States Magistrate Judge Jeffrey L. Cureton
Printed name and title

## Affidavit in Support of Application for Search Warrant

I, TFO Greg Dickerman, being duly sworn, hereby depose and state as follows:

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Instagram username or account that is stored at premises owned, maintained, controlled, or operated by Instagram, a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Instagram to disclose to the government, records and other information in its possession, pertaining to the subscriber or customer associated with the username or account.

2. I am a Task Force Officer with the Homeland Security Investigations, and have been since January 7, 2012. I have been employed with the Arlington Police Department as a police officer since October 16, 2000. I am currently assigned to the North Texas Trafficking Task Force, and am responsible for investigating violations of state and federal laws including, but not limited to, sex trafficking in violation of 18 U.S.C. § 1591. As a Task Force Officer, I have been designated as a Customs Officer pursuant to 19 U.S.C. § 1401(i) and am authorized to enforce all Customs and related laws, conduct searches, make seizures and arrests, and perform other law enforcement duties authorized by law.

**Affidavit in Support of Application for Search Warrant - Page 1 of 10**

Prior to being assigned as a task force officer with Homeland Security Investigations, I spent four years in the Arlington Police Department's Covert Operations Unit investigating prostitution and human trafficking offenses.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that Kerry Jeron Robinson has committed violations of 18 U.S.C. §§ 1591 and 2422-2423. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

## Factual Basis Establishing Probable Cause

5. On October 9, 2012, I was notified by Officer B. Evans of the Arlington Police Department that he encountered a possible human trafficking victim, hereinafter "K.H." K.H. called 911 to report that she was receiving death threats from Kerry Jeron Robinson.

6. K.H. reported that she had been prostituting for Robinson for several months. Robinson advertised K.H. on backpage.com in the "escorts" section. K.H. stated that Robison did not allow her to keep any of the money collected while she was prostituting. K.H. also said Robinson took her from Beaumont, Texas, to Little Rock, Arkansas, for the sole purpose of prostitution.

Robinson physically abused K.H. on multiple occasions. K.H. eventually left Robinson and returned to Arlington, Texas, to a location unknown to Robinson. K.H. received a text message from Robinson telling her that he had a bullet with her name on it.

7. K.H. was arrested on March 13, 2012 in Little Rock, Arkansas, while working as a prostitute for Robinson. At the time of her arrest, K.H. possessed a wireless telephone that Robinson gave to her to use for prostitution.

8. I contacted Detective Ringgold with the Little Rock Police Department and he provided me with a copy of the offense report related to K.H.'s arrest on March 13, 2012. On the police report, there is a black wireless telephone listed in the property section with a property tag of 394579. The Little Rock Police Department recently mailed the phone to me at the HSI SAC Dallas Office in Irving, Texas.

9. Further, I was able to locate an advertisement on backpage.com related to K.H. K.H. confirmed this advertisement was used prior to her arrest. The advertisement was dated March 13, 2012. I obtained information from backpage.com that shows the advertisement was posted using e-mail address: Inkognito501@gmail.com. K.H. provided this e-mail address to me during my initial interview with her. She stated that it was the e-mail address used by Robinson to operate his prostitution operation. The advertisement also showed the same phone number that K.H. advised was linked to the Device, 832-671-XXXX. Upon running an investigative search on the phone number for the Device, I received a return for Kerry Robinson with an address in Houston, Texas.

10. K.H. also told me during an interview that she worked at the Gold Cup Cabaret in Houston, Texas. Robinson, according to K.H., took all the money she made while working at the Gold Cup. K.H. told me that the manager of the Gold Cup was an individual hereinafter referred to as H.N. K.H. said H.N. knew Robinson and knows him as a pimp. K.H. said H.N. does not allow Robinson in the club anymore. After contacting the Houston Police Department Vice Unit, I was provided with an arrest record photograph of an individual, H.N., who is a manager at the Gold Cup. On November 29, 2012, I traveled to Houston to conduct an interview with H.N. I interviewed H.N. inside his office with Special Agent A. Chapman, Houston SAC. H.N. identified Robinson in a photo line-up and said he was no longer allowed in the club. H.N. said Robinson is known as a pimp. H.N. observed K.H. coming to work with bruises on her body. I asked H.N. if there was anyone else currently at the club that knew of K.H. and Robinson. H.N. responded that there was a dancer who he believed knew them. H.N. left and returned a short time later with a black female hereinafter referred to as H.B.

11. I spoke with H.B. She advised that she worked on the same shift with K.H. at the Gold Cup. She knew Robinson well and knew that he was a pimp. H.B. knew Robinson as "Inkognito." H.B. said that when K.H. did not make a lot of money on a particular night, she would return the next day to work with bruises on her body caused by Robinson. H.B. said K.H. told her the bruises were caused by Robinson.

H.B. pulled out her phone and showed me Robinson's Instagram page which showed his Instagram address of "Inkognito_1." H.B. showed me a photograph on Robinson's Instagram account of a foot with a tattoo in script that read "Inkognito." Below the photograph was a text string with "Inkognito_1" that said "still branding my bitches." I have learned through my training and experience as an investigator that pimps will often brand their prostitutes with tattoos in order to show that the prostitute belongs to them.

12. During an interview with K.H., she told me that Robinson used another email address, Inkog411@gmail.com, to book travel for both of them when they traveled from Beaumont, Texas, to Little Rock, Arkansas, for the purpose of prostitution. K.H. said they traveled on a Greyhound from Beaumont to Houston. The traveled on a Mega Bus from Houston to Little Rock. Upon receiving returns on subpoenas sent to Greyhound and Mega Bus, I received documents indicating that travel was booked using the email address of Inkog411@gmail.com.

13. K.H. provided me with her Facebook login information and consented to me accessing her Facebook account. While using K.H.'s account, I found that Robinson was a "friend" of K.H. Robinson's user name is "Inkognito Robinson." His User ID number is 551081290. I accessed Robinson's Facebook account through K.H.'s account. While looking at Robinson's Facebook page, I observed multiple photographs of tattoos in script that read "Inkognito." Each of the photographs appeared to be on different females and each on different parts of their body.

I believe that each of the photographs depict prostitutes that Robinson branded, similar to the above-described Instagram photograph where Robinson texted, "still branding my bitches."

Instagram

14. Instagram is a free-access social networking website that can be accessed at http://www.instagram.com. Instagram allows its users to establish accounts. Instagram was developed and operated by a company of the same name, and was recently acquired by Facebook. Users can also log into Instagram using an existing Facebook account. Users can then use their accounts to share photographs with other Instagram users, and sometimes with the general public. Users can also attach captions (brief textual descriptions) of photographs, that are shared along with the photographs.

15. Instagram asks users to provide basic contact and personal identifying information to Instagram, either during the registration process or thereafter. This information may include the user's full name, gender, contact e-mail addresses, Instagram password, telephone numbers, a personal biography, websites, an account photograph, and other personal identifiers.

16. Instagram users can choose to "follow" other Instagram users. In most cases, any photographs posted by an Instagram user are instantly visible to all of their "followers." Followers can also comment on other users' photographs, and "like" other users' photographs. This "like" feature allows users to give positive feedback on particular photographs.

Affidavit in Support of Application for Search Warrant - Page 6 of 10

17. Instagram users can choose to make their profiles "private," in which case they must approve other users' requests to "follow" them. If a user's profile is not "private," any other user may follow them – and see their posted photographs – without their knowledge or approval.

18. Photographs on Instagram may contain "Metadata," which is technical data embedded into the photographs themselves by users before uploading them to Instagram. Users may also choose to attach additional Metadata to photographs after they have been uploaded to Instagram. Metadata can include, but is not limited to, the time at which a photograph was taken, the device that was used to take the photograph, and the latitude and longitude at which the photograph was taken. All of this information may be stored by Instagram.

19. Instagram also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Instagram, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views an Instagram profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

20. Instagram also retains logs of the device identifiers of any mobile device that a user uses to connect to Instagram. These identifiers uniquely identify each mobile device.

These logs may contain information about the actions taken by the user ID or device identifier on Instagram, including information about the type of action, the date and time of the action, and the user ID and device identifier associated with the action. For example, if a user views an Instagram profile, that user's device identifier log would reflect the fact that the user viewed the profile, and would show when and from what device identifier the user did so.

21. Social networking providers like Instagram typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any payments associated with the service (including any credit card or bank account number). In some cases, Instagram users may communicate directly with Instagram about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Instagram typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

22. Therefore, the computers of Instagram are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Instagram, such as account access information, transaction information, and other account information.

### Information to Be Searched and Things to Be Seized

23. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Instagram to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

### Conclusion

24. Based on the forgoing, I request that the Court issue the proposed search warrant.

25. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that - has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

26.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Greg Dickerman
Task Force Office
Homeland Security Investigations

Sworn to before me, and subscribed in my presence on May 2, 2013 at 4:27 p.m., at Fort Worth, Texas

JEFFREY L. CURETON
UNITED STATES MAGSTRATE JUDGE

**Affidavit in Support of Application for Search Warrant - Page 10 of 10**

## ATTACHMENT A

Property to Be Searched

This warrant applies to information associated with the Instagram username or account "**Inkognito_1**" that is stored at premises owned, maintained, controlled, or operated by Instagram, a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

I.   Information to be disclosed by Instagram

To the extent that the information described in Attachment A is within the possession, custody, or control of Instagram, including any messages, records, files, logs, or information that have been deleted but are still available to Instagram, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Instagram is required to disclose the following information to the government for the username or account listed in Attachment A:

(a)   All contact and personal identifying information, including full name, gender, contact e-mail addresses, Instagram passwords, telephone numbers, screen names, websites, device identifiers, and other personal identifiers.

(b)   All activity logs for the account and all other documents showing the user's posts and other Instagram activities;

(c)   All photos and comments uploaded by that username or account and all photos and comments uploaded by any user that have that user tagged in them; all metadata associated with all photos uploaded by that username or account and all photos uploaded by any user that have that user tagged in them.

(d)   All profile information; links to videos, photographs, articles, and other items; lists of those "followed" by the user; lists of all those "following" the user; rejected "follow" requests; and information about the user's access and use of Instagram applications;

(e)   All records of the account's comments on other photos, including all photos that the user has commented on;

(f) All "check ins" and other location information;

(g) All IP logs, including all records of the IP addresses that logged into the account; all device identifier logs, including all records of the device identifiers that logged into the account;

(h) All records of the account's usage of the "Like" feature, including all photos that the user has "liked";

(k) All records of searches performed by the account;

(m) The types of service utilized by the user;

(n) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(o) All privacy settings and other account settings;

(p) All records pertaining to communications between Instagram and any person regarding the user or the user's Instagram account, including contacts with support services and records of actions taken;

(q) All records of Facebook accounts used to log into the user's Instagram account, or to view, like, or comment on any of the user's posted photographs, including the Facebook identification numbers of those accounts and any other related Facebook information associated with the user's Instagram account.

II.  Information to be seized by the government

All information described above in Section I that constitutes evidence of violations of [STATUTES] 18 U.S.C § 1591, 2421 and other related statutes involving [DEFENDANTS] Kerry Robinson, including, for the username or account identified in Attachment A, information pertaining to the following matters:

(a)  Records relating to who created, used, or communicated with the username or account, including records about their identities and whereabouts.